

IN THE

# Court of Appeals of Indiana

Steven Watters,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



**FILED**

Jul 31 2026, 9:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

July 31, 2026

Court of Appeals Case No.
25A-CR-3310

Appeal from the Posey Circuit Court

The Honorable Craig S. Goedde, Judge

Trial Court Cause Nos.
65C01-2507-CM-633
65C01-2509-F6-764

**Opinion by Chief Judge Tavitas**
Judges Bradford concurs.

Judge Felix concurs in part and dissents in part with separate opinion.

**Tavitas, Chief Judge.**

## Case Summary

[1] In this consolidated appeal, Steven Watters appeals both the revocation of his probation and the denial of his motion to set aside a guilty plea regarding new charges that were filed. Watters argues that he did not knowingly, intelligently, unequivocally, and voluntarily waive his right to counsel in the proceedings. We reverse and remand.

## Issues

[2] Watters raises two issues on appeal, which we expand, revise, and restate as:

  I.   Whether Watters knowingly, intelligently, unequivocally, and voluntarily waived his right to counsel in the probation revocation proceedings.

  II.  Whether Watters knowingly, intelligently, unequivocally, and voluntarily waived his right to counsel in the guilty plea proceedings.

  III. Whether the trial court abused its discretion when it denied Watters' motion to vacate his guilty plea regarding the new charges.

## Facts

On July 28, 2025, Watters assaulted his domestic partner, and the State charged Watters with domestic battery, a Class A misdemeanor, in Cause No. 65C01-2507-CM-000633 ("CM-633"). On July 30, 2025, Watters, proceeding pro se, pleaded guilty pursuant to a plea agreement. The trial court sentenced Watters to one year suspended to probation. The terms of Watters' probation included that he was not to commit a new criminal offense or possess any unprescribed controlled substances.

On September 9, 2025, Watters' probation officer visited Watters' residence and found methamphetamine, marijuana, and paraphernalia. On September 15, 2025, the State charged Watters with: Count I, possession of methamphetamine, a Level 6 felony; Count II, possession of marijuana, a Class B misdemeanor; and Count III, possession of paraphernalia, a Class C misdemeanor, in Cause No. 65C01-2509-F6-00764 ("F6-764"). The Posey County Probation Department also filed a petition in Cause No. CM-633 alleging a probation violation based on Watters' new charges and possession of controlled substances.

On September 15, 2025, Watters had an initial hearing for his probation violation for CM-633 and the new charges in F6-764, at which he appeared via video. At the initial hearing, Watters stated he did not intend to ask for appointed counsel. The trial court's inquiry in CM-633 is as follows:

> THE COURT: . . . And Mr. Watters, do you intend to get an attorney to represent you regarding these matters?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Do you intend to ask the Court for an appointed attorney to help you with these matters?
>
> THE DEFENDANT: No, Your Honor.

Tr. Vol. II p. 5. As to F6-764, the trial court had a similar discussion with Watters:

> THE COURT: Do you want the Court to appoint an attorney to represent you with regard to the new charges they have filed against you?
>
> THE DEFENDANT: No, sir.

*Id*. at 7. The record does not indicate a further inquiry into Watters' choice to proceed without representation.[1]

[6] At the initial hearing, Watters admitted to violating the terms of his probation. Watters also pleaded guilty as charged without a plea agreement in F6-764.

---

[1] During the initial hearing, the trial court stated that it "explained the maximum/minimum possible penalties for each of those during the advice of rights given to Mr. Watters and the others a few moments ago." Tr. Vol. II p. 4. This advisement, however, is not included in the record on appeal.

The trial court[2] entered judgments of conviction on Count II and Count III but deferred entering judgment of conviction on Count I.

[7] At the sentencing hearing on October 14, 2025, the trial court entered judgment of conviction on Count I as a Level 6 felony. Watters was ordered to serve consecutive sentences of: (1) one year in the Posey County Jail for his probation violation in CM-633; and (2) an aggregate sentence of two years on all counts in F6-764.

[8] On October 30, 2025, Watters, by counsel, filed a motion to set aside his admission to the probation violation in CM-633 and his guilty plea in F6-764. In this motion, Watters argued that his admission and plea constituted a manifest injustice because Watters has a mental disability, which "prevented a meaningful understanding of his rights and consequences." Appellant's App. Vol. II p. 51. After an objection from the State, the trial court denied Watters' motion on December 12, 2025, without holding a hearing or making findings of fact or conclusions of law. Watters now appeals.

---

[2] A senior judge heard the initial hearing.

## Discussion and Decision

### I. Watters did not knowingly, intelligently, unequivocally, and voluntarily waive his right to counsel in the probation revocation proceedings.

Watters argues that he did not knowingly, intelligently, unequivocally, and voluntarily waive his right to counsel in the probation revocation proceedings. "Probation revocation implicates a defendant's liberty interest, which entitles him to some procedural due process." *Eaton v. State*, 894 N.E.2d 213, 216 (Ind. Ct. App. 2008) (citing *Parker v. State*, 676 N.E.2d 1083, 1085 (Ind. Ct. App. 1997)), *trans. denied*. Indiana Code Section 35-38-2-3(f) provides that a person who is alleged to have violated their probation "is entitled to confrontation, cross-examination, and **representation by counsel**." (emphasis added). "Because probation revocation does not deprive a defendant of his absolute liberty, but only his conditional liberty, he is not entitled to the full due process rights afforded a defendant in a criminal proceeding." *Eaton*, 894 N.E.2d at 216.

A defendant, however, may waive his right to counsel and proceed pro se. *Eaton*, 894 N.E.2d at 216. "[T]he waiver of counsel must be: (1) knowing; (2) intelligent; (3) unequivocal; and (4) voluntary." *McGraw v. State*, 241 N.E.3d 1175, 1181 (Ind. Ct. App. 2024), *trans. denied*; *see also Silvers v. State*, 945 N.E.2d 1274, 1276 (Ind. Ct. App. 2011). "The record must show that the probationer was made aware of the nature, extent, and importance of the right to counsel as well as the necessary consequences of waiving such a right." *Silvers*, 945

N.E.2d at 1276. We review de novo whether a probationer validly waived his right to counsel. *Id*.

[11] "There is no particular formula or script that must be read to the defendant. The information that must be given 'will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.'" *Hopper v. State,* 957 N.E.2d 613, 618 (Ind. 2011) (quoting *Iowa v. Tovar,* 541 U.S. 77, 88 (2004)). Factors to consider include: "(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se." *Id.* (applying these factors to determine whether a defendant validly waived his right to counsel in a guilty plea). We view these factors by considering the "totality of the circumstances." *Id*. at 623.

[12] Regarding the extent of the trial court's inquiry, in *Eaton*, we determined that Eaton was not properly advised before waiving his right to counsel at his initial hearing for his probation violation. The trial court neither advised Eaton of the consequences of proceeding pro se, nor determined if Eaton was competent to represent himself. 894 N.E.2d at 218.[3] As in *Eaton*, at the initial hearing in this

---

[3] Although *Eaton* was published in 2008 and we are applying the rule from *Hopper*, published in 2011, our Supreme Court, in *Hopper*, specified that it was not overruling *Eaton* and viewed *Eaton* as part of a line of

case, the trial court did not advise Watters of the perils and possible consequences of self-representation, nor did it determine if Watters was competent to represent himself before allowing Watters to admit to violating his probation.

[13]     Here, there is no evidence in the record that indicates that Watters understood the dangers of self-representation and knowingly, intelligently, unequivocally, and voluntarily waived his right to counsel.  The trial court here merely asked if Watters wanted counsel.  The trial court gave no cautionary statements to Watters regarding the perils of self-representation.

[14]     The State argues that when Watters pleaded guilty in CM-633, Watters signed a rights advisement[4] that informed him of the consequences of proceeding pro se. We find this insufficient to warn Watters of the pitfalls of self-representation.[5]

---

cases that did a case-by-case inquiry concerning whether a probationer properly waived his right to counsel. *Hopper*, 957 N.E.2d at 619.

[4] Watters signed an "Acknowledgement of Rights Form – Misdemeanor Initial Hearing."  Appellant's App. Vol. II p. 21.  In Section 2, the form advises defendants that: they have a right to an attorney, pro se defendants will not receive special consideration, and attorneys have skills and expertise that pro se defendants usually do not.  Watters initialed next to Section 2 and signed the bottom of the acknowledgement form.

[5] The State argues that *Butler v. State*, 951 N.E.2d 255 (Ind. Ct. App. 2011), and *Greer v. State*, 690 N.E.2d 1214 (Ind. Ct. App. 1998), *trans. denied*, indicate that probationers never need to be warned about the pitfalls of proceeding pro se.  In *Greer*, we stated, "It is unnecessary to warn [a probationer] of the pitfalls of self-representation, for those pitfalls exist only when he is confronted with prosecutorial activity which is designed to establish his culpability."  690 N.E.2d 1214, 1217.

Our Supreme Court in *Hopper* abrogated *Greer* and suggested that there are instances in which a probationer should be warned of these pitfalls.  957 N.E.2d at 622 ("there are circumstances in which discussion with a defendant about the value of counsel may be especially valuable.").  These instances should be determined using the totality of the circumstances test established in *U.S. v. Hoskins*, 243 F.3d 407 (7th Cir. 2001). *Hopper*, 957 N.E.2d at 618, 623; *see generally Poynter v. State*, 749 N.E.2d 1122, 1128 (Ind. 2001).  *But see*

That acknowledgement was signed over a month before the initial hearing concerning the State's revocation petition; was labeled as an acknowledgement of rights for a misdemeanor initial hearing, which a layman may not have understood to continually apply even in later probation revocation hearings; and the trial court should have inquired with Watters about the possible negative consequences of self-representation to confirm Watters' understanding.[6] We also will not assume that the trial court's off-the-record advisements properly advised Watters of the possible negative consequences of proceeding pro se.

[15] Although Watters has a criminal history, Watters' background does not definitively indicate that he would understand the benefits an attorney would bring. Watters' background is also colored by his alleged mental disability, which the trial court may have learned about through a deeper inquiry into Watters' desire and ability to represent himself.[7] As in *Eaton*, which also involved a petition to revoke probation, Watters should have been advised about attorneys' skills and the risks of proceeding pro se. The trial court here

---

*Hammerlund v. State*, 967 N.E.2d 525, 528 (Ind. Ct. App. 2012) (concluding that *Greer*, "while perhaps once abrogated, is again good law and may serve as guidance to trial courts and practitioners").

[6] The record does not include the trial court's plea colloquy on July 30, 2025, when Watters pleaded guilty to domestic battery in CM-633.

[7] Prior to sentencing, the trial court was not aware of Watters' alleged mental disability. The trial court's first indication of Watters' disability was in his post-conviction motion to vacate his plea and his admission. Watters' post-conviction motion also referred to the fact that, while in jail, Watters was placed in a "turtle suit." Appellant's App. Vol. II p. 49. A "turtle suit" is an anti-suicide smock made of quilted fabric that prevents the material from being rolled, twisted, or ripped, which inhibits the wearer's ability to use the fabric as a weapon or hanging mechanism. We do not consider these facts on this issue as the trial court was not aware of them at the initial hearing.

simply failed to advise Watters of the risks of proceeding pro se and confirm that Watters was knowingly, intelligently, unequivocally, and voluntarily waiving his right to counsel.

[16]     Based on the totality of the circumstances, we find that Watters did not knowingly, intelligently, unequivocally, and voluntarily waive his right to counsel.[8] Accordingly, we reverse the probation revocation in CM-633 and remand for further proceedings consistent with this opinion.[9]

## II. The trial court did not properly evaluate Watters' motion, a de facto post-conviction proceeding, to vacate Watters' guilty plea.

[17]     Watters also argues that he did not knowingly, intelligently, unequivocally, and voluntarily waive his right to counsel in the guilty plea proceedings. We need

---

[8] We do not consider whether Watters' alleged mental disability implicated his ability to knowingly, intelligently, unequivocally, and voluntarily waive counsel because the trial court's advisement was insufficient.

[9] We do not address whether Watters was required to file a petition for post-conviction relief regarding the probation revocation admission issue because the State did not argue that this issue was required to be presented in a post-conviction proceeding. The dissent contends that we should sua sponte require Watters to file a petition for post-conviction relief regarding his admission in the probation revocation proceedings. We disagree for several reasons.

First, the State did not make this argument. The dissent argues that we sua sponte required post-conviction proceedings regarding the guilty plea, but the parties on appeal cited Indiana Code Section 35-35-1-4, which requires post-conviction proceedings in such circumstances. Accordingly, we do not view requiring post-conviction proceedings regarding the guilty plea to be a sua sponte determination. Indiana Code Section 35-35-1-4, however, specifically applies to a guilty plea, not an admission in a probation revocation proceeding.

Moreover, the dissent relies upon *Kirkland v. State*, 176 N.E.3d 986 (Ind. Ct. App. 2021), for the proposition that an admission in a probation revocation proceeding must be challenged through post-conviction proceedings. In *Kirkland*, however, the State specifically argued that the admission was required to be challenged through post-conviction proceedings. Here, the State did not make this argument.

Finally, we note that the dissent relies upon an unpublished memorandum decision from this Court. Indiana Appellate Rule 65(D)(2) provides that "a memorandum decision . . . may be cited for persuasive value **to any court by any litigant**." (emphasis added).

not address that argument, however, because we conclude that the trial court abused its discretion when it denied Watters' motion to vacate his guilty plea. Although Watters contends that the trial court's advisements at the guilty plea hearing were lacking, we do not reach this issue because the trial court's order denying this motion was procedurally insufficient.

[18] Motions to withdraw guilty pleas are governed by statute, which states as follows:

> After being sentenced following a plea of guilty, or guilty but mentally ill at the time of the crime, the convicted person may not as a matter of right withdraw the plea. However, upon motion of the convicted person, the court shall vacate the judgment and allow the withdrawal whenever the convicted person proves that withdrawal is necessary to correct a manifest injustice. **A motion to vacate judgment and withdraw the plea made under this subsection shall be treated by the court as a petition for postconviction relief under the Indiana Rules of Procedure for Postconviction Remedies**.

Ind. Code § 35-35-1-4(c) (emphasis added). The Post-Conviction Rules allow for summary disposition under certain limited circumstances, submission by affidavit, or submission through an evidentiary hearing. *See* Ind. P-C Rule 1(4), 1(5); *see Laboa v. State*, 131 N.E.3d 660, 664 (Ind. Ct. App. 2019) (discussing a post-conviction court's procedural options in ruling on a petition). Further, Post-Conviction Rule 1(6) requires the trial court to "make specific findings of fact, and conclusions of law on all issues presented, whether or not a hearing is held."

Watters' post-sentencing motion to vacate the judgment and withdraw the guilty plea is governed by Indiana's Post-Conviction Rules, but the trial court did not follow the Post-Conviction Rules in deciding Watters's motion or make specific findings of fact and conclusions of law on this motion. Accordingly, we remand for the trial court to comply with Indiana Code Section 35-35-1-4(c) and the Post-Conviction Rules. *See, e.g.*, *Kinman v. State*, 152 N.E.3d 1060 (Ind. 2020) (holding that the post-sentencing motion was governed by the Post-Conviction Rules and the trial court's order failed to include the required findings of fact and conclusions of law).

## Conclusion

Based on the totality of the circumstances, Watters did not knowingly, intelligently, unequivocally, and voluntarily waive his right to counsel in the probation revocation proceedings, and the trial court's order denying Watters' motion to vacate his guilty plea was procedurally insufficient. We, accordingly, reverse and remand.

Reversed and remanded.

Bradford, J., concurs.

Felix, J., concurs in part and dissents in part with separate opinion.

ATTORNEY FOR APPELLANT

Erin L. Berger
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jesse R. Drum
Supervising Deputy Attorney General
Indianapolis, Indiana

**Felix, J., concurring in part and dissenting in part.**

I concur as to Part II and respectfully dissent as to Part I. I agree with the majority's decision to sua sponte treat Watters's motion as a petition for post-conviction relief regarding his guilty plea claim, as required by Indiana Code section 35-35-1-4(c).[10] I disagree with the majority's choice to not likewise sua sponte treat Watters's motion as a petition for post-conviction relief regarding his probation violation admission claim.

When a defendant pleads guilty, he cannot challenge his conviction via a direct appeal but must instead do so through a petition for post-conviction relief. *Monroe v. State*, -- N.E.3d --, 2026 WL 1862497, at *1 (Ind. 2026) (citing *Tumulty v. State*, 666 N.E.2d 394, 395–96 (Ind. 1996)); *see also* Ind. Code § 35-

---

[10] Watters specifically cited "Indiana Code § 35-35-1-4(b)." Appellant's App. Vol. II at 47, 49. This appears to be a typographical error because Indiana Code section 35-35-1-4(b) applies only when a guilty plea has been entered and sentence has not yet been imposed, but Watters had already been sentenced based on his guilty plea. Watters's guilty plea claim is therefore properly addressed under Indiana Code section 35-35-1-4(c). *See Moryl v. Ransone*, 4 N.E.3d 1133, 1139 (Ind. 2014) (declining to "elevate form over substance").

35-1-4(c). The same is true when a defendant admits to a probation violation and later challenges that admission. *Kirkland v. State*, 176 N.E.3d 986, 988 (Ind. Ct. App. 2021) (citing *Huffman v. State*, 822 N.E.2d 656, 658–59 (Ind. Ct. App. 2005)); *cf. J.W. v. State*, 113 N.E.3d 1202, 1204 (Ind. 2019) (holding juveniles may not challenge the validity of delinquency adjudication admissions on direct appeal).

[24] As recognized by the panel in *Kirkland v. State*, this court has split on whether we should (1) address the merits of a direct appeal challenging the validity of a probation violation admission or (2) require the defendant to go through the post-conviction relief process. 176 N.E.3d 986, 989 (Ind. Ct. App. 2021). I agree with the *Kirkland* panel's conclusion that we should not address such claims on direct appeal and should instead wait until post-conviction proceedings have taken place. *See Montanez v. State*, 277 N.E.3d 537, No. 25A-CR-2184 (Ind. Ct. App. Feb. 4, 2026) (mem.) (dismissing direct appeal challenging probation violation admission and requiring claim to be brought via post-conviction relief petition; May, J., authoring with Mathias, J., and Felix, J., concurring), *trans. not sought*. Post-conviction proceedings are "specifically designed to allow [the petitioner] an opportunity to establish the factual assertions he makes concerning his guilty plea." *Tumulty v. State*, 666 N.E.2d 394, 396 (Ind. 1996) (quoting *Crain v. State*, 261 Ind. 272, 273, 301 N.E.2d 751, 751–52 (1973)). The same holds true for challenges to probation violation admissions. *See* Ind. Post-Conviction Rule 1(1)(a)(5) (providing relief to anyone claiming "his probation, parole or conditional release [was] unlawfully

revoked"); *id.* 1(1)(b) (requiring all challenges to the validity of a conviction or sentence be made via a post-conviction relief petition); *cf. J.W. v. State*, 113 N.E.3d 1202, 1207 (Ind. 2019) (explaining challenge to settlement agreement or agreed judgment "often requires the aggrieved party to develop a factual record that he did not enter into the agreement freely and with informed consent"). To rule on the merits of Watters's probation violation admission claim, we need a fully developed record, which we do not have and will not have until he has gone through the post-conviction relief process.

[25] The trial court here did not hold a hearing on Watters's motion to set aside in accordance with Indiana Post-Conviction Rule 1(5).[11] The State did not file a substantive response to Watters's motion, *see* Ind. Post-Conviction Rule 1(4)(a), so the trial court should not have denied that motion without further proceedings, *see id.* 1(4)(f). Nor is there any indication that the parties engaged in any discovery regarding Watters's motion such that a motion for summary disposition could have been filed. *See id.* 1(4)(g). Because the Post-Conviction Rules were not followed for both the guilty plea claim and the probation violation admission claim, I would reverse the denial of Watters's motion to set

---

[11] Indiana Post-Conviction Rule 1 was amended after Watters filed and the trial court ruled on his motion to set aside. *See* Order Amending Rules of Post-Conviction Remedies, No. 26S-MS-8 (Ind. Jan. 20, 2026). Those amendments did not significantly alter Post-Conviction Rule 1's substance for purposes of this case. *See id. Compare* P-C.R. 1 (effective Jan. 1, 2025, to Feb. 1, 2026), *with* P-C.R. 1 (effective Feb. 2, 2026).

aside without reaching the merits of any part thereof and remand for further

proceedings not inconsistent with this opinion on the entire motion.[12]

---

[12] Post-Conviction Rule 1(2) requires a petitioner to file a "verified petition." If on remand Watters chooses to continue pursuing the claims in his motion to set aside, the trial court should require Watters to comply with this verification requirement, among other requirements set forth in the Post-Conviction Rules.